1
2
3
4
5
6
7

# United States District Court
# Central District of California
# Western Division

8
9
10
11

| | |
|---|---|
| WILLIAM YOUNG, *et al.*, | CV 20-04048 TJH (PVCx) |
| Plaintiffs, | |
| v. | **Order** |
| THE ALLSTATE COMPANY, | **and** |
| Defendant. | **Judgment** |
| | [76] [JS-6] |

12
13
14
15
16
17
18
19
20

21    The Court has considered Defendant The Allstate Company's ["Allstate"] motion
22  for summary judgment [dkt. # 76], together with the moving and opposing papers.

23    Plaintiffs William Young and Kelly Young [collectively "the Youngs"] own a
24  house in Malibu, California.  On November 10, 2018, the house was destroyed by the
25  Woolsey Fire.  Allstate insured the Youngs' house under a homeowner's policy that the
26  Young first acquired in 2012 ["the Policy"]. The Youngs' Allstate agents were the
27  father and son team of Mike and Scott Herman ["the Hermans"]

28    The Policy had a base dwelling limit of $449,915.00, plus an additional 50% of

the base dwelling limit under a Building Structure Reimbursement Extended Limits Endorsement ["Extended Endorsement"], which increased the dwelling limit to a total of $674,872.50 ["the Dwelling Limit"].  The policy covered the repair or replacement of the house with "like kind and quality."

After the house was destroyed, Allstate issued payments to the Youngs totaling $1,398,070.83.  That amount included many coverage limits of the Policy, including, but not limited to, the Dwelling Limit of $674,872.50.

On May 1, 2020, the Youngs filed this case against Allstate, alleging that they could not rebuild their house for the Policy's Dwelling Limit and that they had relied on the Hermans' representations that they were adequately covered.

On November 6, 2020, the Youngs filed their First Amended Complaint ["FAC"].  On November 20, 2020, Allstate filed its Answer.  On June 22, 2021, this case was assigned to this Court from Judge André Birotte, Jr.

On March 22, 2022, the Court approved the proposed Joint Final Pretrial Conference Order ["FPTCO"].  The FPTCO represented, *inter alia*, that the Youngs would pursue only three of their claims: (1) Negligence; (2) Negligent misrepresentation; and (3) Promissory estoppel.   Until the instant motion was filed, there was no substantive motion practice in this case.

On February 21, 2023, because the Court had continued the trial date and could not determine, from the sparse record, whether any issues, here, might be resolvable before trial, the Court informed the parties that it would entertain any motions for summary judgment or partial summary judgment.

Allstate, now, moves for summary judgment.


**Summary Judgment Standard**

At trial, the Youngs will have the burden of proof on all issues; consequently, summary judgment could be granted, here, only if the Youngs failed to produce sufficient admissible evidence to establish a *prima facie* case as to each of their claims.

Order and Judgment   Page 2 of 12

1    *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Allstate, however, has the

2    initial burden to show that the Youngs lack enough evidence to establish a *prima facie*

3    case.  *See Williams v. Gerber Prods. Co.*, 552 F. 3d 934, 938 (9th Cir. 2008).  Allstate

4    has met that initial burden.  Consequently, the burden is now on the Youngs to

5    establish, with admissible evidence, a *prima facie* case for each of their claims.  *See*

6    *Celotex*, 477 U.S. at 322.

7        When considering a summary judgment motion, the Court cannot weigh evidence

8    or make credibility determinations.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255

9    (1986).  Further, the Court must accept the Youngs' admissible facts as true and draw

10   all reasonable inferences in their favor.  *Liberty Lobby*, 477 U.S. at 255.

11

12   **Integration Clause**

13       As an initial matter, Allstate argued that the integration clause in the Policy

14   precludes all of the Youngs' claims.  However, Allstate did not assert an affirmative

15   defense based on the integration clause.  That defense should have been asserted as an

16   affirmative defense because, if established, it would have negated Allstate's liability

17   even if the Youngs prevailed on their claims.  *See Addison v. City of Baker City*, 258

18   F. Supp. 3d 1207, 1239 (D. Or. 2017).  Because Allstate did not plead that affirmative

19   defense, it was waived.  *KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 714 (9th

20   Cir. 2020).  Moreover, Allstate confirmed in the FPTCO that it would not advance any

21   affirmative defenses at trial.

22       Regardless, even if not waived, the integration clause defense would not have

23   succeeded here.  When an insurance policy contains an integration clause that limits the

24   agreements between insurer and insured to those contained in the written policy, the

25   insured cannot assert that the insurance agent orally changed the policy's terms in a

26   way that would be inconsistent with the written policy.  *Everett v. State Farm Gen. Ins.*

27   *Co.*, 162 Cal. App. 4th 649, 663 (2008).  Here, the Youngs did not allege or argue that

28   there was an oral modification of the Policy.

**Negligence Claims' Duty of Care**

The Youngs' negligence claims require them to establish that Allstate owed them a special duty of care as to the Hermans' advice regarding coverage limits.

Generally, under California law, insurance agents do not owe insureds a duty to advise them on the adequacy of their insurance coverage. *Wallman v. Suddock*, 200 Cal. App. 4th 1288, 1309 (2011). However, there are three exceptions: (1) When the agent misrepresents the nature, extent, or scope of the insured's coverage; (2) When the insured requests or inquires about a particular type, or extent, of coverage; and (3) When there is either an express agreement or the agents held themselves out as having expertise in a given field of insurance being sought by the insured. *Moriarty v. Bayside Ins. Assocs., Inc.*, No. 20-56139, 2021 WL 4061105, at *1-*2 (9th Cir. Sept. 7, 2021) (citing *Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 927 (1997).

Here, based on the FPTCO, the Youngs' negligent misrepresentation claim is based on the Hermans' alleged misrepresentations that the Dwelling Limit would be adequate to rebuild the house; the negligence claim is based on the Hermans' alleged failure to provide a policy with an adequate Dwelling Limit, as the Youngs had requested; and promissory estoppel claim is based on the argument that Allstate is bound by the Hermans' promise to the Youngs that the Dwelling Limit was adequate to rebuild the house. Therefore, the Youngs' claims invoke the first and second exceptions to the general rule that insurance agents do not owe a special duty of care to insureds. *See Moriarty*, 2021 WL 4061105, at *1-*2.

To establish its *prima facie* case on those claims, William Young provided a declaration in opposition to the instant motion. Young declared, *inter alia*, that: (1) On several occasions, including in the fall of 2017, he spoke with the Hermans and explained that he was concerned the Policy would not cover the cost to rebuild his house; (2) He asked the Hermans whether they would be better off with a Guaranteed Replacement Cost Coverage policy, which, he understood at the time, would cover the cost to rebuild their house regardless of the actual amount; (3) The Hermans told him

words to the effect of "You don't need to get that Guaranteed coverage, because your Extended Endorsement is good enough," and "You will have plenty of money to rebuild your house if you need to."

However, Young's declaration regarding Allstate's duty, as well as his supplemental declaration regarding damages, is not admissible.

First, Young's declarations are fatally defective – neither was signed under penalty of perjury. *See* 28 U.S.C. § 1746. "An affidavit or declaration used to … oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Only sworn affidavits – or unsworn declarations that are, *inter alia*, subscribed under penalty of perjury, pursuant 28 U.S.C. § 1746 – satisfy the requirement of Rule 56(c)(4). *See Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995); *Silverman v. Mendiburu*, 785 F. App'x 460 (9th Cir. 2019). Because Young's declarations were neither sworn nor subscribed under penalty of perjury, the Youngs cannot use his declarations to satisfy their summary judgment burden. *See Nadler v. Nature's Way Prod., LLC*, No. CV 13-00100 TJH OPx, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015).

At the summary judgment stage, the Court, generally, does not dwell on whether evidence has been presented in an admissible form, but, rather, whether the contents of the evidence are admissible, such that it could be presented in an admissible form at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). However, the penalty of perjury requirement for declarations is more than a mere formality – it goes to the very ability of the Court to consider testimony by declarants who do not stand in person before the Court. "Inclusion of the language 'under penalty of perjury' is an integral requirement of [28 U.S.C. § 1746] for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements." *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d

1  Cir. 2013); *see also United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315
2  (3d Cir. 2019).

3      If Young's failure to properly subscribe the declarations under penalty of perjury
4  was but a mere oversight, the Court would have expected the Youngs' counsel to have
5  sought immediate *ex parte* relief to obtain leave of Court to file amended and properly
6  subscribed declarations.  Allstate pointed out the subscription deficiency in its Reply
7  papers filed on Monday, March 13, 2023. The Court has yet to receive anything from
8  the Youngs.  Further, the Court notes that the declaration of the Youngs' counsel – also
9  filed in opposition to the instant motion – was properly subscribed under penalty of
10  perjury.  Moreover, the Youngs' trial brief, filed on March 16, 2023, did not address
11  any of the evidentiary deficiencies raised by Allstate.

12      Second, the portion of Young's declaration as to his discussions with the
13  Hermans regarding the appropriateness of obtaining an Allstate homeowner's policy
14  with guaranteed replacement coverage was new evidence that had not been previously
15  disclosed.  Moreover, the declaration contradicted the Youngs' prior interrogatory
16  responses and Young's deposition testimony.

17      At a minimum, the Youngs should have, first, updated their discovery responses,
18  as required by Fed. R. Civ. P. 26(e)(1)(A).  More significantly, a party cannot create
19  an issue of fact in opposition to a summary judgment motion by introducing a
20  declaration that clearly and unambiguously contradicts his deposition testimony.  *See*
21  *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). That is especially true when
22  the declaration is not subscribed under penalty of perjury.  *See Nadler*, 2015 WL
23  12791504, at *1.  Moreover, the Youngs have not attempted to seek leave of Court to
24  offer any explanation, let alone a reasonable one, as to why they did not previously
25  disclose the new information. *See Yeager*, 693 F.3d at 1081.

26      Finally, while a party, generally, may not introduce new evidence via a Reply,
27  a party may introduce evidence that directly responds to evidence provided in
28  Opposition papers. *See Terrell v. Contra Costa County*, 232 Fed. Appx. 626, 629 n.

1 | 2 (9th Cir. Apr. 16, 2007).  Here, in its Reply papers, Allstate submitted a declaration
2 | from Glen A. Davis, an Allstate employee since 1986.  Davis declared – under penalty
3 | of perjury – that Allstate stopped offering guaranteed replacement homeowner's
4 | policies in California in 1995.  If that is, indeed, true, it is quite implausible that Young
5 | actually had the asserted discussions with the Hermans in 2017.  However, at this
6 | juncture, the Court cannot make credibility determinations.  *Liberty Lobby*, 477 U.S.
7 | at 255.

8 |    Consequently, the Court must disregard Young's declaration.

9 |    Nevertheless, there is other evidence in the record regarding the discussions
10 | Young had with the Hermans that the Court may consider.  Fed. R. Civ. P. 56(c)(3).
11 | Allstate submitted excerpts of Young's deposition transcript.  During his deposition,
12 | Young described his conversations with the Hermans somewhat differently than he did
13 | in his declaration.  After Allstate's counsel asked Young, "Did you have any idea what
14 | you would need in terms of your overall policy limits at the time?" Young responded:

15 |    You know, I pretty much relied on them. I would ask them, you know,
16 |    "How do I look?" They would sometimes throw a number out.  And I
17 |    would say, "Is that enough to rebuild?"  Sometimes, you know, they'd
18 |    just pull up the computer and say, "No. It looks good. You're covered.
19 |    Don't worry about it."

20 |    California courts have held that a duty of reasonable care arises under very
21 | similar facts.  *See Free v. Republic Ins. Co.*, 8 Cal. App. 4th 1726, 1730 (1992).
22 | Specifically, in *Free*, the Second District Court of Appeal held that, when an insured
23 | asked his agent whether his coverage was adequate to rebuild his house, and the agent
24 | answered, a specific duty arose that required the agent to exercise due care in tendering
25 | a response.  *Free*, 8 Cal. App. 4th at 1730.  The Court of Appeal explained that the
26 | "plaintiff sought to be protected against a very specific eventuality – the destruction of
27 | his home."  *Free*, 8 Cal. App. 4th at 1730.

28 |    Allstate urged the Court to not follow *Free*, but it pointed to no authority that

1   would allow the Court to ignore what is, by all indications, good law.  Allstate urged
2   the Court to, instead, follow the First District Court of Appeal's unpublished decision
3   in *Worden v. Farmers Fire Insurance Exchange,* No. A156876, 2020 WL 6879333
4   (Cal. Ct. App. Nov. 24, 2020).  However, because that decision was not published, it
5   was not intended to be cited, *see* Cal. R. Ct. 8.1115(a), and that seriously diminishes
6   its authoritative weight.  The opinion in *Free* was published and the Ninth Circuit has
7   cited to *Free* as recently as 2021.  *See Moriarty,* 2021 WL 4061105, at *1.  Even if the
8   Court were to rely on *Worden*, it is far from certain that it necessarily compels a
9   different outcome than *Free*.  *Worden* relied on distinguishable facts, including, *inter*
10  *alia*, that Worden never asked his insurance agent to review his policy limits, and he
11  made only a single, bare request for "adequate" insurance.  *See Worden,* 2020 WL
12  6879333 at *8.

13      Nor did Allstate cite to any authority to support its suggestion that California
14  Insurance Code § 10102, which was enacted in 1993, abrogated *Free*.  Indeed, the
15  notice required by that statute beseeches consumers to, among other things, "[c]ontact
16  your agent, broker, or insurance company if you have questions about what is covered
17  or if you want to discuss your coverage options."  Cal. Ins. Code § 10102(a).  If
18  anything, such language supports just the kind of duty acknowledged by the Court of
19  Appeal in *Free*.  Moreover, it is exactly the action that the Youngs purported to have
20  taken.

21      Accordingly, the Youngs made a *prima facie* case that Allstate, via the Hermans,
22  had a special duty to use reasonable care in advising the Youngs as to the adequacy of
23  their insurance coverage.

24

25  **Reasonable Reliance**

26      The Youngs' claims for negligent misrepresentation and promissory estoppel
27  require them to establish a *prima facie* case that their reliance on the Hermans'
28  representations was reasonable.  *See Rios v. Scottsdale Ins. Co.*, 119 Cal. App. 4th

1    1020, 1028 (2004); *Jones v. Wachovia Bank*, 230 Cal. App. 4th 935, 945 (2014).

2        California courts have, generally, held that an insured's reliance on their

3    insurance agent's representations is reasonable, absent some notice or warning.

4    *Clement v. Smith*, 16 Cal. App. 4th 39, 47 (1993).  Here, the fact that the Youngs

5    established a *prima facie* case that the Hermans owed them a special duty only bolsters

6    the reasonableness of their reliance.  *See Clement*, 16 Cal. App. 4th at 47.

7        Allstate argued, *inter alia*, that the Youngs' reliance was not reasonable because

8    they admitted to receiving annual policy declarations that contained notices explaining,

9    for example, that "Allstate does not warrant the adequacy of the estimate to cover any

10   future losses" and that "one cannot know the actual amount it will cost to replace your

11   home until after a covered total loss has occurred."  However, as discussed above, the

12   Youngs, also, received a notice from Allstate, mandated by the State of California,

13   which advised them to contact their insurance agents to inquire about the adequacy of

14   their policy limits.  Copies of both notices were submitted, here, by Allstate, but they

15   tend to disprove its argument because it would have been reasonable for the Youngs to

16   heed those warnings by consulting with the Hermans regarding their coverage limits.

17       Allstate, also, provided copies of text messages between William Young and

18   Scott Herman during the Woolsey Fire.  Allstate argued that those texts show that

19   Young asked Scott Herman to increase his policy limits. Allstate, further, argued that

20   the texts established that Young knew that he was underinsured and, therefore, did not,

21   actually, rely on any representations to the contrary.  However, at best, Allstate

22   exaggerated the value of the texts, and, at worst, badly mischaracterized it.  In the text

23   exchange, Herman gave Young specific information about the difference in coverage

24   between theft and fire destruction as to Young's firearms, to which Young replied,

25   "Can [I] increase everything?"  The more apparent conclusion is that Young and

26   Herman were discussing an increase only to Young's firearms coverage for theft and

27   fire. The Court must draw all reasonable inferences, here, in favor of the Youngs. See

28   *Liberty Lobby*, 477 U.S. at 255.

1    Consequently, the Youngs established a *prima facie* case that their reliance on

2    the Hermans' advice regarding the sufficiency of their Dwelling Limit was reasonable.

3

4    **Damages**

5    Next, to avoid summary judgment, the Youngs bear the burden to establish a

6    *prima facie* case that they incurred damages as to each of their claims.  Each of their

7    three claims require proof of damages.  *See Rios*, 119 Cal. App. 4th at 1028 (2004);

8    *Jones*, 230 Cal. App. 4th at 945 (2014); *Jones v. Grewe*, 189 Cal. App. 3d 950, 954

9    (1987).

10    To establish their damages, the Youngs, primarily, offered Young's two

11    declarations to show that it cost them more than the Dwelling Limit to rebuild their

12    house.  As discussed above, those declarations have no weight, here, because they were

13    not subscribed under penalty of perjury.

14    The Youngs, also, submitted other evidence, but, again, there are significant

15    problems as to that other evidence.

16    While the Court granted the parties' stipulation as to the admissibility and

17    authenticity of certain trial exhibits, the Youngs, here, relied on two ledgers of

18    expenses that were not included in the trial exhibit list or authenticated, here, by a valid

19    declaration.  Indeed, the source of the information contained in the two ledgers is

20    unknown and unattested.  Consequently, the contents of those two ledgers are

21    inadmissible hearsay.  *See* Fed. R. Evid. 801(c).  It is well settled that a party cannot

22    satisfy its burden on a summary judgment motion with hearsay evidence.  *Loomis v.*

23    *Cornish*, 836 F.3d 991, 996-97 (9th Cir. 2016).

24    Next, the Youngs submitted a document containing estimates by David A. Diaz,

25    one of their building contractors, as to his costs for his work partially rebuilding the

26    house.  However, again, Diaz's estimates were neither verified nor authenticated by

27    a declaration.  The Youngs did not submit a declaration from Diaz.  Consequently,

28    Diaz's document is inadmissible hearsay, and, accordingly, is of no help to the Youngs,

1    here. *See Loomis*, 836 F.3d at 996-97.

2        Finally, the Court cannot consider the Youngs' allegations in the FAC because

3 it was not verified. While there is no requirement for pleadings in federal court to be

4 verified, Fed. R. Civ. P. 11(a), unverified complaints cannot be considered in

5 opposition to a summary judgment motion, Fed. R. Civ. P. 56(c)(4).

6        In reviewing Allstate's evidence regarding the Youngs' damages, the Court took

7 note of the report from Allstate's damages expert, George C. Mitchel. The report,

8 based on a ledger produced by the Youngs in discovery, concluded that the Youngs'

9 building costs went largely to expansions and upgrades, and that, without the

10 expansions and upgrades, the Dwelling Limit would have been sufficient to rebuild the

11 house to "like kind and quality" of the house that was destroyed. Mitchel, also,

12 concluded that Diaz's estimates did not break out the Youngs' voluntary improvements,

13 and the Youngs' costs exceeded the amounts supported by the subcontractor invoices

14 the Youngs produced to Allstate. In opposition, the Youngs argued, *inter alia*, that the

15 report omitted several hundred thousand dollars worth of costs that the Youngs

16 incurred, and that Mitchel's erroneously assumed that the Youngs did not use a general

17 contractor who would have been entitled to 20% of costs as his overhead and profit.

18 However, the Youngs presented no admissible evidence to rebut that report.

19        In sum, the Youngs submitted no admissible evidence as to damages for any of

20 their claims. Consequently, the Youngs failed to establish a *prima facie* case as to

21 damages for any of their claims.

22        Because damages is an essential element of each of their claims, the Youngs

23 failed to meet their burden to oppose Allstate's motion for summary judgment.

24

25        Accordingly,

26

27        𝕴𝖙 𝖎𝖘 𝕺𝖗𝖉𝖊𝖗𝖊𝖉 that Allstate's motion for summary judgment be, and hereby is,

28 𝕲𝖗𝖆𝖓𝖙𝖊𝖉.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

It is further Ordered, Adjudged and Decreed that Judgment be, and hereby is, Entered in favor of Defendant The Allstate Company and against Plaintiffs William Young and Kelly Young.

It is further Ordered, Adjudged and Decreed that Plaintiffs William Young and Kelly Young shall take nothing.

Date: March 17, 2023

Terry J. Hatter, Jr.
Senior United States District Judge